MATTHEW BENDER & COMPANY, INC., Plaintiff,

Hyperlaw, Inc., Intervenor Plaintiff–Appellee–Cross–Appellant,

v.

WEST PUBLISHING CO. and West Publishing Corporation, Defendants–Appellants–Cross–Appellees.

Nos. 00–7070 XAP, 00–7029 L.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 2000.

Decided Jan. 23, 2001.

Carl J. Hartmann, III, New York, N.Y. (Paul J. Ruskin, Douglaston, NY, on the brief, Alan D. Sugarman, New York, NY, of counsel), for Intervenor–Plaintiff–Appellee–Cross–Appellant.

James F. Rittinger, Satterlee Stephens Burke & Burke (Joshua M. Rubins, on the brief), New York, NY, for Defendants–Appellants–Cross–Appellees.

Charles D. Ossola, Arnold & Porter (Carol Lally, on the brief, Keith Kupferschmid, of counsel), Washington, DC, submitted a brief for *Amicus Curiae Software & Information Industry Association*.

Before: STRAUB and SOTOMAYOR, Circuit Judges, and SPATT, District Judge.*

STRAUB, Circuit Judge:

Defendants–Appellants–Cross–Appellees West Publishing Co. and West Publishing Corp. (collectively "West") appeal from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., *Judge* ), ordering them to pay the attorneys' fees of Intervenor–Plaintiff–Appellee–Cross–Appellant Hyperlaw, Inc. ("Hyperlaw"), after Hyperlaw prevailed in a declaratory judgment action under the Copyright Act, 17 U.S.C. § 101 *et seq.* Hyperlaw cross-appeals, challenging the District Court's calculation of the fee amount. The District Court found that West violated 17 U.S.C. § 403 by failing to delineate the portion of its works for which copyright protection was claimed. The court also found that West's conduct of the litigation was in bad faith, citing West's refusal to cooperate with Hyperlaw before the initiation of suit and West's filing of a motion to dismiss Hyperlaw's complaint on justiciability grounds. The District Court thus ordered West to pay Hyperlaw $813,724.25 in attorneys' fees, pursuant to 17 U.S.C. § 505.

For the reasons given below, we hold that the District Court exceeded its allowable discretion in awarding attorneys' fees based on its determinations (i) that West "violated" section 403, and (ii) that West's conduct of the litigation was in bad faith. Accordingly, we vacate the award. However, we remand for clarification, because the District Court's opinion does not allow us to conclude with certainty whether there were additional instances of bad faith conduct upon which the court relied in awarding fees. Because we vacate the award, we do not address West's remaining arguments or Hyperlaw's cross-appeal, all of which challenge the amount of fees awarded.

## BACKGROUND

This case comes to us at the attorneys' fees stage, after a long and contentious battle over West's claim that it is entitled to copyright protection with respect to judicial opinions that it publishes in its case reporters. Detailed factual accounts are set forth in two prior Second Circuit opinions: *Matthew Bender & Co. v.. West Publishing Co.*, 158 F.3d 674 (2d Cir.1998), *cert. denied*, 526 U.S. 1154, 119 S.Ct. 2039, 143 L.Ed.2d 1048 (1999) ("*Hyperlaw I* "), and *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 693 (2d Cir.1998), *cert. denied*, 526 U.S. 1154, 119 S.Ct. 2039, 143 L.Ed.2d 1048 (1999) ("*Hyperlaw II* "). Accordingly, we recount only the facts that bear upon the parties' claims in this appeal and that provide essential context.

## I. *The Underlying Action*

West creates and publishes printed compilations of reports of federal and state judicial opinions. Each West report contains the text of the judicial opinion with additional features, or "editorial enhancements," *Hyperlaw I*, 158 F.3d at 692 (Sweet, J., dissenting), inserted by West.

---

* The Honorable Arthur D. Spatt, of the United States District Court for the Eastern District of New York, sitting by designation.

The enhancements added by West include a syllabus, headnotes, key numbers, parallel or alternative citations to cases, attorney information, and data on subsequent or procedural history.[1] *Id.* at 676. "West obtains the text of judicial opinions directly from courts. It alters these texts as described above to create a case report, and then publishes these case reports (first in advance sheets, then in bound volumes) in different series of 'case reporters.'" *Id.* at 677.

Hyperlaw and Matthew Bender & Co., Inc. ("Bender") are publishers of compact disc-read only memory ("CD ROM") compilations of judicial opinions. *See id.* Hyperlaw obtains the text of most of the opinions it publishes directly from the courts. *See id.* However, in the early 1990s Hyperlaw wished to expand its CD-ROM product to include certain cases and information that it could not obtain from the courts. *See id.* It hoped to achieve this expansion by copying West's case reports (after redacting the syllabi, headnotes, and key numbers)—indeed, directly scanning the cases—from West's reporters. *See id.* Hyperlaw also sought to add "star pagination" to its reports. "Star pagination" consists of cross-reference citations (preceded by an asterisk) that show the page location of particular text in West's printed version of the opinions. *See Hyperlaw II,* 158 F.3d at 695 & n. 1. Likewise, Bender sought to insert star pagination in its CD ROM case reports. *See id.* at 697–98.

Hoping to avoid claims of copyright infringement by West, in July 1991, Hyperlaw contacted West to determine which aspects of West's published opinions were copyrighted and which aspects were in the public domain. Hyperlaw also presented West with four alternative means of obtaining West's material, and asked West whether, in its opinion, any of the means would infringe West copyrights. West, however, refused to provide the informa-tion sought by Hyperlaw, responding only that Hyperlaw should "retain competent copyright counsel to give [it] the advice [it] seek[s]." What followed was an exchange of increasingly vitriolic correspondence between the two parties over the course of nearly one year. In the end, Hyperlaw received no guidance from West.

As a result, Hyperlaw intervened in this suit, which had been brought by Bender for a judgment declaring that Bender's insertion of star pagination in its CD–ROM version of judicial opinions did not infringe West's copyright. *See Hyperlaw I,* 158 F.3d at 678. Hyperlaw requested the same relief, and also sought a declaration that its redacted versions of West's case reports, which include certain of West's editorial enhancements, contain no copyrightable material and thus may be copied without infringement. *See id.* West moved to dismiss Hyperlaw's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of justiciability, arguing that Hyperlaw had not yet produced a product with the West features at issue. The District Court found that there was a factual dispute over both prongs of the justiciability test—Hyperlaw's intent and ability to produce the CD ROM products, and Hyperlaw's reasonable apprehension of being sued by West—and thus concluded that an evidentiary hearing was necessary. After the hearing, the District Court found that Hyperlaw intended and was able to add the West features at issue and had a reasonable apprehension of suit. Accordingly, the court denied West's motion to dismiss.

Following discovery, the filing of summary judgment motions, and a hearing, the District Court in November 1996 granted summary judgment to Hyperlaw and Bender with respect to the star pagination feature. The court found that the insertion of star pagination on the CD–ROM versions of the cases would not reproduce any protectable element of West's

---

**1.** The syllabus "digests and heralds the opinion's general holdings." *Hyperlaw I,* 158 F.3d at 676. The headnotes "summarize the specif-ic points of law recited in each opinion." *Id.* The key numbers "categorize points of law into different legal topics and subtopics." *Id.*

products. The court further ruled that star pagination would be permitted under the fair use doctrine even if West's pagination were copyrightable. West appealed to this Court, which affirmed the District Court's order, holding that "star pagination does not *create* a 'copy' of any protected elements of West's compilations or infringe West's copyrights" and that "[i]n any event, under a proper reading of the Copyright Act, the insertion of star pagination does not amount to infringement of West's arrangement of cases." *Hyperlaw II*, 158 F.3d at 696. In a strong dissent, the Honorable Robert W. Sweet, sitting by designation from the United States District Court for the Southern District of New York, argued that the "West page numbers ... result from the totality of the West compilation process which includes its concededly original and copyrightable work, *i.e.* attorney description, headnotes, method of citation and emending of parallel or alternate citations." *Id.* at 708–09 (Sweet, J., dissenting). Citing the fact that three federal courts had ruled in West's favor on the same issue, *see Oasis Publ'g Co. v. West Publ'g Co.*, 924 F.Supp. 918 (D.Minn.1996); *West Publ'g Co. v. Mead Data Cent., Inc.*, 616 F.Supp. 1571 (D.Minn.1985), *aff'd*, 799 F.2d 1219 (8th Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987), Judge Sweet asserted that "West's case arrangements, an essential part of which is page citations, are original works of authorship entitled to copyright protection." *Hyperlaw II*, 158 F.3d at 709 (Sweet, J., dissenting).

With respect to the editorial enhancements, the District Court denied summary judgment and held a bench trial. The District Court's decision, issued in May 1997, held that West's editorial enhancements represented an insufficient "creative effort" to give rise to a protected interest under the Copyright Act, and that West's changes, "taken separately or collectively," "do not result in 'a distinguishable variation' of the opinion written by the court." West again appealed to this Court, which affirmed the District Court's judgment on this aspect as well, concluding that "West's choices on selection and arrangement can reasonably be viewed as obvious, typical, and lacking even minimal creativity." [2] *Hyperlaw I*, 158 F.3d at 677. Judge Sweet again wrote a detailed dissent, arguing that "West's selection and arrangement of factual annotations to public domain judicial opinions, considered as a whole," are copyrightable. *Id.* at 690 (Sweet, J., dissenting).

## II. *The Attorneys' Fees*

Having thus prevailed on the merits, Hyperlaw moved for attorneys' fees under 17 U.S.C. § 505, which allows a district court, "in its discretion," to award a reasonable attorney's fee to the prevailing party in a Copyright Act action.[3] In a nine-page opinion and order, the District Court determined that an award of attorneys' fees against West was appropriate to promote the purposes of the Copyright Act. According to the court, even if there was a non-frivolous basis for West's claims, West's refusal to cooperate in Hyperlaw's "efforts to obtain a judicial resolution" of the question of copyrightability, combined with West's failure to comply with section 403's notice provision, warranted an award of fees to Hyperlaw. The court then calculated the amount of fees based on reasonable rates and hours billed during the entirety of the litigation, and ordered that West pay Hyperlaw $813,724.25. This timely appeal followed.

## DISCUSSION

On appeal, West argues that the award of any fees is unsupported by the record

---

**2.** The appeals of both the star pagination issue and the editorial enhancements issue were heard together, and the opinions, though separate, were issued on the same day. *See Hyperlaw II*, 158 F.3d at 695 n. 2.

**3.** Bender also moved for an attorneys' fee award, but withdrew its motion after settling with West. Bender is thus not a party to this appeal.

and constitutes an abuse of discretion, and that the award of all fees incurred by Hyperlaw during the entire litigation also constitutes an abuse of discretion. Hyperlaw cross-appeals, arguing that the District Court erred in its calculation of the fees.

"The standard of review of an award of attorney's fees is highly deferential to the district court." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999) (internal quotation marks omitted). "Attorney's fees must be reasonable in terms of the circumstances of the particular case, and the district court's determination will be reversed on appeal only for an abuse of discretion." *Id.* " 'Abuse of discretion' is one of the most deferential standards of review; it recognizes that the district court, which is intimately familiar with the nuances of the case, is in a far better position to make certain decisions than is an appellate court, which must work from a cold record." *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir.1992) (per curiam). However, "[a] district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law," *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir.1995) (noting that this Court may reverse an award of attorneys' fees "if the district court applied the wrong legal standard" (citations omitted)), or "on a clearly erroneous assessment of the evidence," *Kerin v. United States Postal Serv.*, 218 F.3d 185, 188–89 (2d Cir.2000).

Section 505 of the Copyright Act provides that

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. In *Fogerty v. Fantasy*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court held that the standard governing the award of attorneys' fees under section 505 should be identical for prevailing plaintiffs and prevailing defendants. In *dicta*, the Court noted that "[t]here is no precise rule or formula for making [attorneys' fees] determinations, but instead equitable discretion should be exercised," *id.* (internal quotation marks omitted), and then proceeded to list several nonexclusive factors courts should consider when exercising this discretion, namely, "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," *id.* at 534 n. 19, 114 S.Ct. 1023 (internal quotation marks omitted). The Court cautioned, however, that such factors may be used only "so long as [they] are faithful to the purposes of the Copyright Act." *Id.*

Subsequent to *Fogerty*, several other circuits have accorded the objective reasonableness factor substantial weight in determinations whether to award attorneys' fees. *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable"); *Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730–31 (7th Cir.1998) (vacating award of fees because, *inter alia*, losing party's claims were objectively reasonable); *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir. 1996) (holding that "the district court abused its discretion by failing to award attorney's fees based on the objective unreasonableness of [plaintiff's] complaint"); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (awarding fees because, *inter alia*, plaintiff's claims were "factually unreasonable"); *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir.1994) (affirming award of fees because, *inter alia*, "the objective reasonableness factor strongly

weigh[ed] in favor of awarding attorney's fees and costs"). The same is true of the district courts in this Circuit. *See, e.g.,* *EMI Catalogue P'ship v. CBS/Fox Co.,* 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award); *Williams v. Crichton,* 891 F.Supp. 120, 122 (S.D.N.Y.1994) (awarding fees solely because losing party's claims were objectively unreasonable); *Screenlife Establishment v. Tower Video, Inc.,* 868 F.Supp. 47, 52 (S.D.N.Y.1994) (same).

■ This emphasis on objective reasonableness is firmly rooted in *Fogerty*'s admonition that any factor a court considers in deciding whether to award attorneys' fees must be "faithful to the purposes of the Copyright Act." 510 U.S. at 534 n. 19, 114 S.Ct. 1023. The "principle purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them." *Diamond v. Am–Law Publ'g Corp.,* 745 F.2d 142, 147 (2d Cir.1984). As such, the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act. *See Mitek Holdings, Inc. v. Arce Eng'g Co.,* 198 F.3d 840, 842–43 (11th Cir.1999) ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, *i.e.,* by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." (quoting *Fogerty,* 510 U.S. at 526–27, 114 S.Ct. 1023)); *Lotus,* 140 F.3d at 75 ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place,

the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim."). In sum, objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted.

■ This is not to say, however, that a finding of objective reasonableness necessarily precludes the award of fees. In an appropriate case, the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable. *See Matthews v. Freedman,* 157 F.3d 25, 29 (1st Cir.1998) ("Depending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable.").

■ The District Court here began its assessment of West's opposition to Hyperlaw's fee request by acknowledging West's contention that its arguments at trial were objectively reasonable. Unfortunately, however, the District Court did not make a clear finding on this claim. The court's assessment of this point is limited to the statement that, "[a]lthough there is some merit to West's argument that ... there was a non-frivolous basis for West's claims [at trial], that does not end the inquiry. An objectively unreasonable argument is not necessarily frivolous or made in bad faith."

We are uncertain why the District Court did not clearly address the issue because it is beyond dispute that West's arguments at trial were objectively reasonable. Both the editorial enhancements appeal and the star pagination appeal provoked vigorous dissenting opinions agreeing with West's positions. *See Hyperlaw I,* 158 F.3d at 689–93 (Sweet, J., dissenting); *Hyperlaw II,* 158 F.3d at 708–11 (Sweet, J., dissent-

ing).[4] Moreover, the Eighth Circuit has ruled in West's favor on a substantially similar star pagination issue. *See West Publ'g Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1227–28 (8th Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *see also Hyperlaw II,* 158 F.3d at 707 (noting disagreement with Eighth Circuit's holding). We hold, therefore, that West's positions in this litigation were objectively reasonable. *Cf. Lotus,* 140 F.3d at 73–74 (indicating that the facts that "various judges ... had different views" and that the losing party had previously prevailed on a "virtually identical claim" demonstrated objective reasonableness).

This holding, however, does not necessarily require reversal of the District Court's determination that Hyperlaw is entitled to attorneys' fees. As noted, in an appropriate case, other factors may support a fee award despite a finding of objective reasonableness. Here, the District Court found that Hyperlaw was entitled to fees because West "violated" section 403 and because West's conduct of the litigation was in bad faith. We consider each of these other factors in turn.

### I. *Attorneys' Fees Based on West's "Violation" of Section 403*

■ Section 403 of the Copyright Act states that

[s]ections 401(d) and 402(d) shall not apply to a work published in copies or phonorecords consisting predominantly of one or more works of the United States Government unless the notice of copyright appearing on the published copies or phonorecords to which a defendant in the copyright infringement suit had access includes a statement identifying, either affirmatively or negatively,

those portions of the copies or phonorecords embodying any work or works protected under this title.

17 U.S.C. § 403. Sections 401(d) and 402(d) prevent an alleged infringer from asserting an "innocent infringement" defense if a notice of copyright appears on the material allegedly infringed. 17 U.S.C. §§ 401(d), 402(d). The innocent infringement defense can result in the mitigation of actual or statutory damages. *See id.*

■ Thus, section 403 serves to reinstate the innocent infringement defense in certain circumstances. The section does not impose any affirmative obligation on a copyright holder, but rather simply states that, in the case of works consisting predominantly of government material, the failure to provide the specified form of notice allows an alleged infringer to assert an innocent infringement defense and to mitigate his damages.[5] Indeed, the Copyright Act's notice provision, section 401, is permissive rather than mandatory: "Whenever a work protected under this title is published ... by authority of the copyright owner, a notice of copyright ... *may* be placed on publicly distributed copies...." 17 U.S.C. § 401(a) (emphasis added); *see also* 17 U.S.C. § 401(b) ("*If* a notice appears on the copies, it shall consist of the following three elements ...." (emphasis added)).

Nonetheless, the District Court based its award of fees in part on an asserted "violation" of section 403 by West. The court found that West "was not endeavoring to protect an original work of authorship which would clearly foster the purposes of the Copyright Act" but "was asserting a copyright in a work consisting predominantly of the work of government agencies, i.e., the courts." Accord-

4. Although the District Court acknowledged Judge Sweet's dissents, it did so only to support its finding that West's arguments were non-frivolous.

5. This Court has found no federal case law applying or interpreting 17 U.S.C. § 403, and

commentary on the section is minimal. *See* John W. Hazard, Jr., Copyright Law in Business and Practice § 9.06[2] [a.1] (rev. ed.2000) (noting that until the District Court opinion in this case, section 403 had been "entirely untested").

ingly, the court found, West's limited copyright notice violated section 403, which the court characterized as "prohibit[ing] the assertion of copyright in a work consisting predominantly of federal government works unless the copyright notice identifies the portions that are not subject to copyright." [6]

The District Court's interpretation of section 403 conflicts with the statutory text, which, as discussed above, says nothing about prohibiting the assertion of copyright. *See* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.12[C][1] n. 50 (effect of omission of section 403 notice is to foreclose the notice from serving absolutely to preclude a defense based on innocent infringement in mitigation of damages). In support of its interpretation, the court invoked the legislative history of section 403, which observes that the section is aimed at the practice of publishing a government work commercially after adding "some 'new matter' in the form of an introduction, editing, illustrations, etc., and ... includ[ing] a general copyright notice in the name of the commercial publisher." H.R.REP. No. 94–1476, at 145–46 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5761–62. However, while this history certainly reveals the impetus behind the legislation, it does not suggest that a publisher can be said to have "violated" section 403. A plain reading of the section demonstrates that the sole consequence of failing to provide sufficient notice is that an alleged infringer may mitigate his actual or statutory damages by asserting the innocent infringement defense.[7] *See United*

*States v. Dauray*, 215 F.3d 257, 260 (2d Cir.2000) ("Our starting point in statutory interpretation is the statute's plain meaning, if it has one.").

The District Court's imposition of attorneys' fees on the basis of a "violation" of section 403 of the Copyright Act involves an application of the "wrong legal standard," *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir.1995). Accordingly, we conclude that the District Court exceeded its allowable discretion in awarding fees on this basis.[8] *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000) ("A district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law ....").

## II. *Attorneys' Fees Based on West's Pre-Litigation and Litigation Conduct*

If a party's *conduct* is unreasonable, a district court has the discretion to award fees. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 731 (7th Cir.1998) (noting that court may consider a party's sanctionable conduct in making a fee decision); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.10[D][1] (noting that attorneys' fees have been awarded where a party conducted the litigation in a manner calculated to delay a hearing on the merits and to increase the opposing party's costs). The ultimate goal, according to *Fogerty*, is to be "faithful to the purposes of the Copyright Act." 510 U.S. at 534 n. 19, 114 S.Ct.

---

6. West's notice states: "Copyright is not claimed as to any part of the original work prepared by a United States Government officer or employee as part of that person's official duties."

7. We do not express an opinion as to whether West's copyright notice is sufficient under 17 U.S.C. § 403, for we hold that even if it is not, attorneys' fees may not be assessed on that basis.

8. The District Court noted that, in light of West's "violation" of 17 U.S.C. § 403, "Hy-

perlaw's action vindicated the public interest in wide dissemination of federal judicial opinions." We differ with this statement. The public interest that copyright law is designed to promote is the wide availability of creative works. *See Fogerty*, 510 U.S. at 527, 114 S.Ct. 1023 ("[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works ...."); *id.* at 534 n. 19, 114 S.Ct. 1023 (goal in awarding fees is to be "faithful to the purposes of the Copyright Act"). Judicial opinions are decidedly not creative works.

1023. Thus, bad faith in the conduct of the litigation is a valid ground for an award of fees.

 The question, then, is whether West's conduct in this litigation—both before and after the initiation of suit—was truly in bad faith. In the District Court's view, West's conduct warranted an award of fees to Hyperlaw because West failed to "forthrightly recognize[ ] that there was an open question concerning its right to assert copyright protection in court opinions" and refused to "cooperate[ ] in Hyperlaw's efforts to obtain a judicial resolution of that question." According to the court, "West used every effort to avoid an adjudication of its rights and to make it difficult for Hyperlaw to determine what portions of the reported opinions were in the public domain and could be freely copied." The court appears to have relied on two types of misconduct by West. First, the court noted that "every time Hyperlaw attempted to engage in a dialog with West to determine which elements in a judicial opinion West considered protectable, West rejected the effort and responded with platitudes that gave Hyperlaw no guidance as to where West claimed its copyright protection began or ended." Second, the court observed that after Hyperlaw filed its declaratory judgment action, "West again strove mightily to prevent a judicial resolution of the question by arguing that the controversy was not justiciable."

 While there can be no gainsaying the significant deference accorded to district courts when reviewing fee decisions, we find that the District Court here exceeded its allowable discretion in awarding fees on the grounds it cited. First, as a party confronted by a suspected or potential infringer, West did not act unreasonably by refusing to cooperate with Hyperlaw before the initiation of suit. Assuming West legitimately believed that its products were protected—a reasonable belief, in light of the previous court decisions on the same issue—it had no duty to "recognize[ ] that there was an open question

concerning its right to assert copyright protection in court opinions" and had the right vigorously to challenge any actions by Hyperlaw that might infringe on its copyrights. A party's good faith refusal to cooperate with a suspected infringer prior to the filing of suit is not a proper ground for the award of attorneys' fees to the prevailing party in the subsequent suit.

In an analogous situation, the Seventh Circuit held that a patent holder was not required to "grant clearance to a competitor's designs upon request" and that the patent holder's refusal to do so did not create declaratory judgment jurisdiction. *See International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1213 (7th Cir.1980). The court in that case held that the competitor's "unsolicited demand that [the patent holder] admit noninfringement or face suit coupled with [the patent holder's] noncommittal response could not have created a reasonable apprehension" of suit. *Id.; cf. Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir.1998) ("Copyright defendants with strong legal or factual defenses should not be deterred from litigation by the possibility that their refusal to settle an invalid claim will be held against them after they prevail."). Similarly, here, West's reluctance to express an opinion as to the legality of Hyperlaw's actions should not be held against West. To be sure, if West had engaged in other conduct indicative of bad faith prior to the filing of suit by Hyperlaw, that misconduct could properly have contributed to the District Court's decision to award fees to Hyperlaw. However, the District Court does not refer to any specific incidents of such bad faith; rather, it simply points to West's repeated insistence that Hyperlaw obtain copyright counsel.

Second, with regard to West's conduct during the litigation, the only "misconduct" specifically identified by the District Court is West's filing of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). According to the District Court, this motion demonstrated an effort by

West "to prevent a judicial resolution" of the scope of its copyrights. We do not agree that this is a proper basis for an award of attorneys' fees under the Copyright Act. The District Court's award essentially punishes West for availing itself of a right provided by the Federal Rules, namely, moving to dismiss the plaintiff's complaint. To allow fees on this basis would be to deter the exercise of rights afforded to litigants in federal court. *Cf. Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir.1986) (noting, though not in the copyright context, that an award of attorneys' fees should not "deter persons with colorable claims from pursuing those claims"). Of course, if West's motion had been frivolous, lacking any plausible merit, an award of attorneys' fees may have been an appropriate sanction. However, the District Court did not find, and there is no indication in the record, that the motion was frivolous. Indeed, the District Court deemed it necessary to hold an evidentiary hearing before deciding the motion. Accordingly, under these circumstances, we conclude that the District Court's decision to base the fee award on West's efforts to dismiss Hyperlaw's case was improper.

We do not wish to constrain district courts' discretion in awarding attorneys' fees under the Copyright Act. Misconduct before or during litigation can, in appropriate cases, provide the basis for an award of fees. However, here, although the District Court found that West's "conduct of the litigation" was in bad faith, it cited as support for this assertion only West's refusal to cooperate with Hyperlaw prior to the initiation of suit and West's attempt to dismiss the suit on justiciability grounds. We hold that neither ground supports an award of attorneys' fees.

■ In its brief to this Court, Hyperlaw lists numerous "dirty tricks" and "threats" perpetrated by West before and during the litigation. These alleged abuses were not cited by the District Court, however, and few of the incidents are sup-

ported by references to the record. Likewise, the District Court observed that the "record in this case" demonstrates that "West used every effort to avoid an adjudication of its rights." If this statement refers to conduct other than West's refusal to cooperate and its motion to dismiss, the court does not specifically identify any such incidents in the record, making appellate review difficult. With no indication in its decision to award fees that the District Court relied on the incidents alleged by Hyperlaw, we decline to address whether they would have supported a fee award. However, we remand the case so that the District Court may clarify whether it relied on any other specific pre-litigation misconduct by West, as well as any frivolous or bad faith conduct during the litigation, in awarding fees. If so, the court should specifically identify that conduct in its decision. *Cf. Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 521 (2d Cir.1993) (remanding for clarification of reasons for attorneys' fees, since "this Court will not speculate as to whether the award is appropriate under any other theory that has not been stated by the district court"). Assuming that the District Court is able to identify such conduct, and thus adheres to its determination that Hyperlaw is entitled to an award of attorneys' fees based on West's bad faith conduct, the court should not lose sight of the fact that it is awarding fees solely on the basis of West's bad faith conduct when it turns to the question of the precise amount of fees to which Hyperlaw is entitled. Any fees it awards should be related to costs or expenses incurred as a direct result of bad faith conduct by West. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that it is "important ... for the district court to provide a concise but clear explanation of its reasons for [a] fee award"); *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir.1992) ("If we are to be satisfied that a district court has properly exercised its discretion, we must be informed by the

record of why the district court acted as it did.").

## CONCLUSION

For the foregoing reasons, we vacate the judgment ordering West to pay Hyperlaw its reasonable attorneys' fees and remand for clarification as to whether the District Court relied on instances of bad faith conduct not specifically identified in its opinion. In light of the fact that we vacate the award and remand, we decline to address the arguments challenging the calculation of the award. Each party shall bear its own costs on this appeal.