Judi **BOISSON and American Country Quilts and Linens, Inc. D/B/A/ Judi Boisson American Country, Plaintiffs,**

v.

**BANIAN LTD., and Vijay Rao, Defendants.**

No. CV 97–1266.

United States District Court, E.D. New York.

Sept. 3, 2003.

Kaplan, Gottbetter & Levenson, LLP, By Paul R. Levenson, Ashima Aggarwal, New York City, for Plaintiff.

Greenberg Traurig LLP, By G. Roxanne Elings, Studipta Rao, New York City, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a copyright infringement action commenced by Plaintiffs Judi Boisson and her wholly-owned company, American Country Quilts and Linens, Inc. (Collectively "Boisson" or "Plaintiff") against Defendants Banian, Inc. and its principal, Vijay Rao (collectively "Defendant"). Plaintiff's action alleges that quilts marketed by Defendant infringed upon Plaintiff's copyrighted designs. The case was tried before the Honorable Thomas C. Platt who rendered a decision in favor of Defendant, finding that no design set forth in the complaint infringed on Plaintiff's copyrighted designs. Plaintiff appealed and, on appeal, the Second Circuit affirmed the finding of no infringement with respect to one of the designs but held that two of Defendant's designs infringed on one of Plaintiff's copyrights. In view of the finding of infringement, the appellate court remanded this matter to the district court to make findings regarding Plaintiff's claims for damages and attorneys' fees. Those matters are now before this court.

## BACKGROUND

### I. The Parties

The facts set forth herein are drawn from the testimony and record developed at trial.[1]

Judi Boisson has been involved in the quilt industry for over twenty years, first

---

1. At a post-remand conference the parties agreed that no further trial was necessary and that a decision on the matters before this court could be rendered based upon the facts earlier developed.

as a collector of antique quilts and subsequently as a designer and seller of antique-style quilts. Over the years, she created a somewhat lucrative business by advertising nationwide, publishing her own catalogs, selling her designs to other catalog companies, and attending trade shows. Boisson has become fairly well-known as a quilt designer and manufacturer.

In the early 1990s, Boisson designed two quilts entitled "School Days I" and "School Days II," both depicting the alphabet in a grid-like pattern along with other small icons, all incorporating a variety of colors and stitching patterns. The layout of these quilts and all design choices were made by Judi Boisson herself. All of Boisson's quilts and catalogs included copyright notices.

Vijay Rao is the president of Banian, Ltd. Rao is an electrical engineer who became interested in the quilt business in the early 1990's. In an effort to become involved with the quilting industry, Rao contacted Rajeev Sharma, a textile importer, who helped him to import some quilts from Angal Garments in India. The first of these quilts was called "ABC Green Version I." Thereafter, Rao ordered "ABC Green Version II," which was based on modifications to Version I. The third quilt at issue in this case was the "ABC Navy" quilt, which Rao claims to have designed based upon the other ABC quilts.

Rao has not sold Version I of the ABC Green quilt since 1993 and ceased selling Version II in 1998. While Rao stopped selling the Navy quilt in response to this litigation, he has, since the Court of Appeals' finding of non-infringement, resumed selling this quilt.

## II. *Procedural Background*

Plaintiff alleged that Defendant's quilts infringed on Plaintiff's "School Days I," "School Days II," and "Pastel Twinkle Star" quilts. Following a bench trial, the court found in favor of Defendant, finding no infringement on the ground that Defendant's designs were not substantially similar to the protectable elements of Plaintiff's designs.

On appeal, the Second Circuit held that Defendant's "ABC Green Version I" and "ABC Green Version II" quilt designs infringed on Plaintiff's "School Days I" design. With respect to all other counts of infringement, the Court of Appeals affirmed the decision of the District Court. On remand, Plaintiff seeks statutory damages, injunctive relief, and attorney's fees and costs.

## III. *Plaintiff's Claims for Relief*

Before this court, Plaintiff seeks statutory damages, a permanent injunction, and full attorney's fees and costs. In view of the holding of the Circuit Court, copyright validity and infringement are no longer at issue. Thus, many of the specific facts which may have been relevant at trial are not as pertinent in determining the appropriate remedy. Only those facts relevant to the issues on remand will be addressed as necessary.

## DISCUSSION

## I. *Legal Principals*

### A. *Statutory Damages*

17 U.S.C. § 504 ("Section 504") provides that a copyright infringer shall be liable for *either* actual damages and profits or statutory damages. 17 U.S.C. § 504(a)(emphasis added). *Stevens v. Aeonian Press, Inc.,* 2002 WL 31387224 *1 (S.D.N.Y. October 23, 2002). A plaintiff who seeks statutory damages is currently entitled to collect in the range of $750 to $30,000 for each work that is infringed upon. In cases filed before the statutory

amendments setting damages in this range, the prior range of $500 to $20,000 is the applicable statutory range.

In addition to the statutory range of damages, Section 504 provides that if a plaintiff proves willful infringement, the court has discretion to increase the statutory award up to $100,000 ($150,000 pursuant to the 1999 Amendments). *See* 17 U.S.C. § 504(c)(2). In *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), the court noted that a defendant's conduct can be considered willful if "the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Id.* at 112.

■ On the other hand, if it is shown that the infringer was not aware, and had no reason to be aware of the infringement, he can be declared an innocent infringer. An innocent infringer is not absolved of all liability. Instead, the finding of innocence allows the court to exercise its discretion to fashion the proper equitable remedy. *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1117 (2nd Cir. 1986). In such instances, the court has discretion to reduce the statutory award to $200. 17 U.S.C. 504(c).

■ A finding that an infringement is not willful does not necessarily mean that the infringement is innocent and that the infringer is entitled to a reduction in damages. *See Fitzgerald*, 807 F.2d at 1115. Instead, the court considers a variety of factors when exercising its discretion to determine the proper award, within the statutory range. Such factors include the plaintiff's lost revenues, defendant's profits, the value of the copyright and the deterrent effect of the award. *Stevens*, 2002 WL 31387224 *1.

### B. *Injunctive Relief*

■ The Copyright Act gives the court discretion to grant temporary and permanent injunctions deemed reasonably necessary to prevent future infringements. 17 U.S.C. § 502(a). Permanent injunctions are appropriate only where infringement has been found and there is a substantial likelihood of future infringements. *See Central Point Software, Inc. v. Global Software & Accessories, Inc.*, 880 F.Supp. 957, 966 (E.D.N.Y.1995). On the other hand, permanent injunctive relief will not be awarded in cases where there is no history of infringement, the defendant is cooperative in ceasing to sell infringing products and there does not exist any probability of future infringement. *See Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F.Supp. 1347, 1358 ( S.D.N.Y.1987).

### C. *Attorney's Fees*

In addition to the remedies above, the court in a copyright action has the discretion to award full costs to the prevailing party. As part of these costs, the court may award a reasonable attorney's fee. 17 U.S.C. § 505; *see Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116, 120 (2d Cir.2001).

■ The standard to apply when deciding whether a party has "prevailed" is the same for plaintiffs and defendants. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Earth Flag, Ltd. v. Alamo Flag Co.*, 154 F.Supp.2d 663, 665 (S.D.N.Y. 2001). A party need not be successful on all claims to be deemed the "prevailing party" under the Copyright Act. Instead, a party may be deemed prevailing if it succeeds on a significant issue in litigation that achieves some benefits that the party sought in bringing suit. *Screenlife Establishment v. Tower Video, Inc.*, 868 F.Supp. 47, 50 (S.D.N.Y.1994).

■ Prevailing party status does not require an award of fees. *See Fogerty,* 510 U.S. at 534, 114 S.Ct. 1023 (noting that attorney's fees are not be awarded automatically, but rather the decision is within the court's discretion). Instead, the court considers the conduct of the non-prevailing party. The factors considered when determining whether an award of fees is appropriate include frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence. *Id.* The factor of objective reasonableness is entitled to "substantial weight" when determining whether an award of fees is warranted. *Matthew Bender,* 240 F.3d at 122; *Video–Cinema Films, Inc. v. Cable News Network, Inc.,* 2003 WL 1701904 *1 (S.D.N.Y. March 31, 2003).

With the above-referenced principals in mind, the court turns to the merits of Plaintiff's claims for relief.

## II. *Disposition of Plaintiff's Claims*

### A. *Statutory Damages*

Plaintiff here has elected to seek statutory damages. Because this suit was filed in 1997, the range of $500 to $20,000 is the applicable statutory range.

As noted above, the determination of the proper amount of the award requires the court to consider whether the infringement was willful, innocent, or neither. In addition, the court considers the plaintiff's lost revenues, defendant's profits, the value of the copyright and the deterrent effect of the award. *Stevens,* 2002 WL 31387224 *1.

### 1. *Wilfulness or Innocence*

■ It is Plaintiff's contention that the striking similarity between the copyrighted quilt and the infringing quilts warrants a finding of willfulness. Acceptance of this argument, however, would turn all infringements into willful infringements, which is clearly beyond the scope of the law. The court turns, therefore, to consider other facts in this case.

The evidence developed shows that Defendant had access to Plaintiff's catalogs. However, there is no evidence that Defendant used the catalogs and copyrighted designs to engage in infringing activities. Mere access to the catalogs is, in this case, insufficient to establish willfulness. The next evidence offered by Plaintiff in support of a finding of willfulness is a conversation in which Defendant engaged at a 1995 quilt trade show. Another trader approached Rao at the trade show, and, after observing one of the alphabet quilts, the trader made the comment "I carry Judi Boisson quilts as well," seemingly hinting that the trader thought Rao's quilts to be Plaintiff's designs. It is Plaintiff's contention that this comment should have alerted Defendant to the point that he should have investigated the matter, and his failure to take action warrants a finding of reckless disregard, and thus willfulness. Defendant counters by explaining that he thought the trader simply meant that he carried Judi Boisson quilts in addition to other quilts. While it is difficult to ascertain the true meaning of the comment, both proposals are plausible. Regardless of the actual intention of the trader who made the comment, the court would be hard-pressed to conclude that one vague, out-of-context comment warrants a finding of reckless disregard. In sum, after review of the extensive evidence developed at trial of this matter, the court concludes that there is no evidence to support a finding of willful infringement.

As noted above, statutory damages can be reduced to $200 in cases where the infringer was unaware, and had no reason to be aware, of the infringement. Defen-

dant contends that the infringement here was completely innocent and a reduction in damages is therefore appropriate.

■■■■■ A finding that an infringement was not willful does not necessarily lead to the conclusion that the infringement was innocent. *Fitzgerald*, 807 F.2d at 1115. In light of this standard and the facts developed at trial, the court concludes that the infringement can be deemed neither willful nor innocent. The catalogs in Defendant's possession make it clear that Defendant had access to Plaintiff's copyrighted designs. While the possession of these catalogs does not necessarily lead to the conclusion that Defendant knew of, or recklessly disregarded, the possibility of infringement, the court concludes that Defendant had reason to be aware of the infringement. Thus, a finding of innocent infringement is improper here. The court therefore rejects the invitation to increase or decrease the statutory damage award and turns to consider the appropriate award within the statutory range.

## 2. *Other Factors*

■■■■■ In determining the appropriate level of statutory damages, the court looks at a number of factors in addition to willfulness, including the value of the copyright, expenses saved and profits gained by the defendant, lost revenues by the plaintiff, defendant's cooperation in providing records, and the need to deter the defendant and others from future infringing activity. *Fitzgerald*, 807 F.2d at 1117. While this court is required to consider such factors, there is broad discretion in determining the amount of an award. *Id.* at 1116.

### a. *Value of Plaintiff's Copyright*

■■■ On the whole, little evidence is provided as to the value of the Plaintiff's copyright on the School Days I quilt. It is noted that Plaintiff designed that quilt herself and sold the quilt for a number of years for a significant profit. However, no evidence has been presented to demonstrate a reduction in the value of Plaintiff's copyright. Furthermore, it seems clear that Defendant did not mass market his quilts. He sold only 153 of the infringing quilts for a profit of $3,306. Moreover, he promptly withdrew the infringing quilts from the market upon initiation of the lawsuit. In light of all of these facts, and in the absence of any concrete evidence of a devaluation of Plaintiff's copyright, the court would be hard pressed to conclude that there has been a significant devaluation to warrant the high end of statutory damages.

### b. *Saved Expenses*

The next factor that may be considered is any expenses saved as a result of the infringement. Plaintiff argues that the School Days I quilt took her at least one month to design despite her extensive arts background and her many years of experience. Thus, Plaintiff contends that it would have taken Defendant even more time to design such a quilt, an expense which has been saved via Defendant's infringement. The evidence is clear, however, that the quilts draw heavily on designs in the public domain, known as Amish quilts. Even assuming that Plaintiff's contention regarding design time is true, there is no evidence whatsoever as to the monetary value of the saved expense. The only materials Plaintiff used to create the School Days I design were a pencil and some tracing paper, and while the court could include the cost of such materials in the final damages figure, the number would obviously be quite small. As to saved labor expenses, there is no evidence offered as to what that expense would be, nor is there any reason to believe that

Defendant would have worked on a similar schedule as the Plaintiff. Perhaps it would have taken Defendant a mere few hours to design a similar quilt on his own, or perhaps it would have taken six months.

Although there is no way to definitively assess the design expenses saved by Defendant, there is no doubt that some expenses were saved. The court therefore will exercise its discretion to award $1,000 to Plaintiff to represent expenses saved by Defendant.

### c. *Defendant's Profits*

As to profits reaped by Defendant as a result of the infringing activity, Defendant has provided evidence of 153 ABC Green quilts sold for a gross revenue of $7,150 and a profit of $3,306. Plaintiff has continually argued that Defendant has been uncooperative in providing documentation of sales and profits. While a defendant's lack of cooperation in providing records is a factor which the court can consider in assessing statutory damages, Plaintiff's contention here is simply wrong. Defendant has been cooperative in providing records, and the records indicate clearly a net profit of $3,306 on the infringing quilts. Plaintiff correctly points to a number of cases which courts have awarded statutory damages which far exceed defendant's actual profits. See *Odegard, Inc. v. Costikyan Classic Carpets*, 963 F.Supp. 1328, 1342 (S.D.N.Y.1997) (awarding statutory damages of $25,000 for one infringement where there is no showing of lost profits by plaintiff or revenue gained by defendant); See also *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 733 (S.D.N.Y.1981) (awarding statutory damages of $40,000 where defendant's profits were $5,177).

When relying to the foregoing authorities, however, Plaintiff fails to note that both cases dealt with a defendant who was a willful infringer within the definition of 17 U.S.C. § 504(c). In *Odegard*, the defendant repeatedly acted dishonestly in relation to both the plaintiff and the court. Similarly, in *Lauratex*, the defendant was a willful infringer who had been served with six copyright infringement claims in the previous three years. In other words, while the court clearly has discretion to award statutory damages in excess of actual profits reaped, courts have exercised that discretion in light of additional circumstances which are lacking in this case. Still, however, in light of this documentation provided by the Defendant, the court will award the $3,306 reaped by Defendant to the Plaintiff as part of the statutory damages.

### d. *Plaintiff's Lost Revenue*

██ In addition to profits reaped by the defendant, the court can look at plaintiff's lost revenue as a result of the infringement. Plaintiff, however, has provided no evidence as to lost revenue. Plaintiff claims that she lost revenue and valuable customers as a result of Defendant's action, but such claims are nothing more than blanket statements with no supporting evidence. While Plaintiff need not prove lost revenue for statutory damages, the court still has complete discretion in considering any lost revenue to make a final determination of statutory damages. See *Odegard*, 963 F.Supp. at 1340 (S.D.N.Y.1997) (noting that only in the case of actual damages, but not statutory damages, plaintiff bears the burden to demonstrate that but for the infringement, there would have been greater sales).

### e. *Deterrence*

The final factor which the court considers is the need to deter the defendant and others from future infringing activity. With regards to the Defendant, an in-

crease in statutory damages would do little to deter future infringing activity. Upon being advised of the initial lawsuit, Defendant promptly ceased selling all quilts involved with the lawsuit, and he continued to do so until receiving a final court order of non-infringement. It is clear that Defendant was entirely cooperative in this lawsuit, and an increase in damages is not necessary to deter Defendant. Although no damages award appears absolutely necessary to deter Defendant from future infringement, the court will not ignore this factor. Instead, to make it clear that damages will not be limited to profits alone and to deter others from infringement, the court will award Plaintiff $500 in statutory damages to deter future infringing conduct by Defendant and others in the industry.

In light of the foregoing, the court awards to Plaintiff a total of $4,806 in statutory damages.

### B. *Injunctive Relief*

The issue as to the propriety of injunctive relief is whether or not Defendant poses a threat of future infringement. Plaintiff argues that there is a threat of continuing infringement because Defendant has continually created new designs by making modifications to previous designs, specifically pointing to Defendant's creation of the ABC Navy quilt as a modification of the ABC Green quilts. Defendant correctly points out, however, that such design by modification is commonplace in the quilting industry. Furthermore, even though the ABC Navy quilt was based on a modification of an infringing quilt, the Navy quilt was found to be non-infringing by both the District Court and the Court of Appeals. Thus, it would be improper for the court to base a finding of a substantial likelihood of future infringement on an action which was never declared to be an infringement.

Defendant points out a number of additional factors which the court considers. Specifically, Defendant has no history of copyright infringement, and he immediately ceased selling the designs when advised of the initial lawsuit. Furthermore, Defendant did not resume selling any of the designs even after the District Court entered a finding of non-infringement, and continued to withhold the designs from the market until a final decision from the Court of Appeals. Finally, Defendant has thus far fully complied with the settlement agreement reached with Plaintiff pertaining to the star-design quilts.

All of these factors weigh strongly against finding a substantial likelihood of future infringement, and thus the court is reluctant to award a permanent injunction against defendant. *See Dolori Fabrics.*, 662 F.Supp. at 1358 (declining to award a permanent injunction where there was no history of infringement, defendant was fully cooperative in ceasing to sell infringing products, and there was no evidence of a probability of future infringement) Furthermore, Defendant argues that a permanent injunction would harm his reputation as a quilt dealer, and that harm outweighs any potential benefit gained by the injunction. The court is reluctant to recognize that injunctive relief would have any drastic effects on Defendant's business as a quilt retailer, especially since Defendant repeatedly stipulated to a permanent injunction in his many settlement offers throughout the course of litigation. In any event, the requisite threat of future infringing activity is lacking completely in this case, and the court therefore declines to award a permanent injunction.

### C. *Attorney's Fees*

Both parties contend that they have prevailed and should therefore be awarded full attorney's fees. After identifying the

prevailing party, the court will turn to consider the factors necessary to determine whether an fee award is warranted.

### 1. *Prevailing Party*

■ The first issue of contention here is whether Plaintiff or Defendant is the prevailing party. Plaintiff initially brought suit claiming a number of infringements. Boisson claimed that defendant's ABC Green Version I, ABC Green Version II, and ABC Navy quilts each infringed on plaintiff's School Days I and School Days II quilts. Although Plaintiff also initially claimed infringement on her Pastel Twinkle Star quilts, this matter was settled before litigation on the alphabet quilts.

The ultimate result of this litigation was that only the ABC Green quilts infringed on plaintiff's School Days I quilt. All other claims were decided in Defendant's favor. Due to the mixed outcome of the initial claims brought by plaintiff, each party claims that they are the prevailing party within the meaning of 17 U.S.C. § 505. It is clear, however, that Boisson succeeded on a significant aspect of her initial lawsuit, and thus it is appropriate to declare Plaintiff as the prevailing party within the meaning of the Copyright Act.

### 2. *Frivolousness*

Neither the actions of Plaintiff nor Defendant can be deemed frivolous. Because there was nothing frivolous about either party's actions, this factor has no bearing on the decision of whether or not to award attorney's fees.

### 3. *Motivation*

■ Defendant's motivation throughout the course of litigation was simply to defend his right to produce and sell quilts which he felt he was entitled to sell. In view of the fact that the District Court and Court of Appeals came to different deci-

sions as to the infringement, it is evident that this was not a clear-cut case to decide. Both parties had a good-faith belief in the merits of their cases, and the litigation was simply an effort to assert those beliefs. Furthermore, Plaintiff made settlement demands throughout the litigation for monetary damages in the amount of $175,000, which far exceeds the statutory maximum. Defendant's refusal to accept this settlement offer was in no way motivated by a bad-faith effort. Thus, this factor alone would not support an award of attorney's fees to the plaintiff. *See Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1127 (2d Cir.1989) (holding that a prevailing plaintiff is not entitled to attorney's fees where defendant litigated in good faith against unreasonable settlement demands from plaintiff).

### 4. *Objective Unreasonableness*

■ The third discretionary factor which courts consider, and the factor that is entitled to substantial weight, is whether the legal or factual arguments put forth by the losing party were objectively unreasonable. *See Matthew Bender*, 240 F.3d at 122. In this case, there is no basis to conclude that Defendant's actions were objectively unreasonable. It is first worth noting that not only did Defendant's claim survive attempts at summary judgment at the trial level, but the District Court ultimately decided the case in Defendant's favor. *See Williamson v. Pearson Educ., Inc.*, 2001 WL 1262964 (S.D.N.Y.2001); *CK Co. v. Burger King Corp.*, 1995 WL 29488 (S.D.N.Y. 1995), *aff'd.*, 122 F.3d 1055, 1995 WL 595526 (2d Cir.1995) (declining to conclude objective unreasonableness and award attorney's fees to the prevailing defendant despite the fact plaintiff's case did not survive summary judgment). Though the Court of Appeals ultimately

reversed the trial court's decision in part, Defendant was nonetheless successful on a number of claims. Furthermore, Defendant's primary argument on appeal was that Plaintiff's copyrights were invalid because her designs were copied from the public domain. Although the Court of Appeals ultimately concluded that there was not enough evidence to support this claim, there is still no basis to conclude that Defendant's actions were objectively unreasonable. *See EMI Catalogue Partnership v. CBS/Fox Co.,* 1996 WL 280813 (S.D.N.Y.1996) (holding that losing plaintiff's claim was not objectively unreasonable, even though it was unsuccessful, because plaintiff survived summary judgment and some claims were settled in plaintiff's favor prior to a jury verdict).

### 5. *Deterrence and Compensation*

The final factor to consider is the need to advance notions of compensation and deterrence. Given the nature of this case, the court does not conclude that an award of attorney's fees is necessary to advance considerations of deterrence. As noted earlier, Defendant was entirely cooperative in ceasing any potentially infringing activity upon being served with this lawsuit. Defendant continued to cease selling all quilts involved until the final disposition by the Court of Appeals. Furthermore, Defendant made multiple attempts to settle this matter for a monetary value which was significantly greater than the current award. Given all of these circumstances, the court does not find any need to further notions of deterrence or compensation, and thus declines to award attorney's fees to the prevailing plaintiff. *See Infinity Broad. Corp. v. Kirkwood,* 63 F.Supp.2d 420, 427–28 (S.D.N.Y.1999) (declining to award attorney's fees where defendant was not a rip-off artist and was entirely responsible and cooperative throughout the course of litigation); *See also Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467 (2d Cir.1985) (declining to award attorney's fees where infringing party gained little profit from the infringing action and made many unsuccessful attempts to reasonably settle the matter).

### CONCLUSION

For the foregoing reasons, the court awards $4,806 in statutory damages to the Plaintiff. A permanent injunction will not be entered and the court declines to award Plaintiff attorney's fees. Plaintiff may submit an order reflecting the holdings herein. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.