Javier **BARRERA** and **Lynn Burgos**, Plaintiffs,

v.

**BROOKLYN MUSIC, LTD.**, K–Tel International, Inc., Frank Babar and John and Jane Does 1 through 10, Defendants.

No. 00 Civ. 9331(RLC).

United States District Court, S.D. New York.

Sept. 16, 2004.

Law Offices of Nicholas A. Penkovsky, P.C., Nicholas A. Penkovsky, of counsel, New York, New York, for Plaintiffs.

## OPINION

ROBERT L. CARTER, District Judge.

In this action, plaintiffs Javier Barrera and Lynn Burgos allege a violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* ("Copyright Act"), against defendants Brooklyn Music, Ltd. and Frank Babar. Upon defendants' failure to answer or otherwise respond to either the complaint or the amended complaint, the court referred the matter to Magistrate Judge Kevin Nathaniel Fox to conduct an inquest and to report and recommend the amount of damages, if any, to be awarded to plaintiffs against defendants.

In a Report and Recommendation dated June 30, 2004 ("R & R"), Magistrate Judge Fox recommended that the court: 1) award plaintiffs actual damages in the amount of $27,000.00; 2) deny plaintiffs' application for an award of profits, attorneys fees and costs; 3) permanently enjoin defendants from making any further infringing use of the Green Silo # 3 photograph ("photograph"), which is the subject of this action; and 4) order defendants to destroy any articles in their possession that make infringing use of the photograph.

Plaintiffs have timely filed objections to Magistrate's R & R, which they support with a declaration from their attorney, Nicholas A. Penkovsky ("Penkovsky decl."). In these submissions, plaintiffs request that the court adopt Magistrate Judge Fox's recommendations that the court: 1) award plaintiffs actual damages in the amount of $27,000.00; 2) permanently enjoin defendants from making further

infringing use of the photograph; and 3) order defendants to destroy any articles in their possession that make infringing use of the photograph. They further request that the court overrule the R & R to the extent that it denies their application for costs. Specifically, they ask the court to clarify whether Magistrate Judge Fox's recommendations to deny their application for costs pursuant to § 505 of the Copyright Act precludes an award of costs pursuant to 28 U.S.C. § 1920 and Rule 54, F.R. Civ. P. They also seek to file a bill of costs to recoup both the cost of personal service of their inquest submission on defendants and their expert witness fee, in addition to any other permissible costs pursuant to 28 U.S.C. § 1920 and Rule 54, F.R. Civ. P.

Pursuant to 28 U.S.C. § 636(b)(1)(C) the court reviews *de novo* those portions of the R & R to which objections have been made and may generally accept, reject or modify, in whole or in part, the recommendations made by the Magistrate Judge.

Based on a review of the entire court file maintained in this action, the court adopts the findings of fact and conclusions of law of Magistrate Judge Fox with regards to the recommendations that the court: 1) award plaintiffs actual damages in the amount of $27,000.00; 2) deny plaintiffs' application for an award of profits and attorneys fees; 3) permanently enjoin defendants from making any further infringing use of the photograph; and 4) order defendants to destroy any articles in their possession that make infringing use of the photograph. The court, however, overrules the R & R with regards to plaintiffs' application for an award of costs and grants costs in the amount of $130.00 for the reasons set out below.

*Plaintiffs' Application for an Award of Costs*

■ Pursuant to plaintiffs' request, we first undertake to clarify the interplay between § 505 of the Copyright Act on the one hand and Rule 54, F.R. Civ. P. and 28 U.S.C. § 1920 on the other. Section 505 of the Copyright Act provides the court with explicit statutory authority to award costs pursuant to a violation of the Copyright Act. *See* 17 U.S.C. § 505.[1] In addition, Rule 54, F.R. Civ. P. and 28 U.S.C. § 1920 constitute general provisions which permit the court to award certain costs to a prevailing party in the absence of a more specific statute. *See* Rule 54, F.R. Civ. P. and 28 U.S.C. § 1920.[2] As such, the court's award of costs in this action is to be

---

**1.** Section 505 provides:
> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505

**2.** Rule 54, F.R. Civ. P. provides in pertinent part:
> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.

Rule 54(d)(1), F.R. Civ. P.

28 U.S.C. § 1920 directs:
> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special

rendered under the auspices of § 505 rather than that of the more general cost shifting provisions.

■ Rule 54, F.R. Civ. P. and 28 U.S.C. § 1920 are not, however, irrelevant to the court's analysis. This court's decisions indicate that the "full costs" referred to in § 505 of the Copyright Act are commensurate with those costs allowed under 28 U.S.C. § 1920. *See United States Media Corp., Inc. v. Edde Entertainment, Inc.,* 1999 WL 498216, at *7 (S.D.N.Y.) (Dolinger, M.J.) ("The weight of authority indicates that the 'full costs' referred to in the Copyright Act are nothing more than the costs allowed under 28 U.S.C. § 1920....We adhere to this consensus."), *Robinson v. Random House, Inc.,* 877 F.Supp. 830, 844 (S.D.N.Y.1995) (Preska, J), *Stevens Linen Associates, Inc. v. Mastercraft Corp.,* 1981 WL 1426, (S.D.N.Y.) (Motley, J). Thus, although the authority to award costs in this action is derived from § 505, caselaw interpreting Rule 54, F.R. Civ. P. and 28 U.S.C. § 1920 provides guidance as to the types of costs deemed recoverable.

■ Magistrate Judge Fox's denial of plaintiffs' costs was based on the lack of evidence on the record before him. (R & R, at 12–13). In their current submissions, plaintiffs seek to recover, and offer evidence of, two items of costs. The first is the cost of personal service, in the amount of $191.00, of their inquest submission on defendants, as ordered by Magistrate Judge Fox. This cost includes $151.00

for service of process by a private process server and a $40.00 statutory filing fee for service upon a corporation pursuant to Section 306 of New York State Business Corporation Law. (Penkovsky decl., ¶¶ 5–6). The second item is the cost of their expert witness Gary Elsner in the amount of $952.00. (Pl.f' inquest submission, exh. 8). We deal with each of these in turn.

■ With respect to private process server fees, this Circuit has recognized that there is a trend to substitute private process servers for United States Marshals and that district courts have discretion to grant appropriate process server fees to the extent that they do not exceed the costs that would have been incurred had the Marshals' office effected service. *United States v. Merritt Meridian Construction Co.,* 95 F.3d 153, 172 (2d Cir. 1996). Pursuant to 28 C.F.R. § 0.114(a)(3), the United States Marshals Service charges $45.00 per hour for process served or executed personally by an employee, agent or contractor of the United States Marshals Service. Therefore, based on a one hour's work rate and given that the defendants were separately served, the court awards plaintiffs $90.00 for process server fees. Plaintiffs may also recover the $40.00 filing fee as Section 306(b)(1) of New York State Business Corporation Law explicitly lists the statutory fee as a taxable disbursement. *See* N.Y. Bus. Corp. § 306(b)(1).[3]

■ Next, plaintiffs ask the court to allow them to recover the cost of their

interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
28 U.S.C. § 1920.

**3.** NY Bus. Corp. § 306(b)(1) states in pertinent part:
Service of process on the secretary of state as agent of a domestic or authorized foreign

corporation shall be made by personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. NY Bus. Corp. § 306(b)(1).

expert witness report. The types of witness fees that may be shifted under 28 U.S.C. § 1920(3) are defined by 28 U.S.C. § 1821. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) ("We hold that absent specific statutory or contractual authorization for the taxation of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."). Fees charged by a party's expert witness for the preparation of their report are not, however, listed in 28 U.S.C. § 1821 as taxable costs. Moreover, this Circuit has made it clear that applications for an award of such expert witness fees should be rejected. *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996). Given that the authority provided by § 505 of the Copyright Act mirrors that of 28 U.S.C. § 1920 recovery is also barred under the Copyright Act. Plaintiffs' application to recover expert witness fees is therefore denied.

## CONCLUSION

For the foregoing reasons, the court: 1) awards plaintiffs actual damages in the amount of $27,000.00; 2) denies plaintiffs' application for an award of profits and attorneys fees; 3) permanently enjoins defendants from making any further infringing use of the photograph; 4) orders defendants to destroy any articles in their possession that make infringing use of the photograph; and 5) awards plaintiffs costs in the amount of $130.00.

**IT IS SO ORDERED**

## REPORT AND RECOMMENDATION

FOX, United States Magistrate Judge.

### I. INTRODUCTION

In this action, plaintiffs Javier Barrera ("Barrera") and Lynn Burgos ("Burgos") (collectively "plaintiffs") allege violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* ("Copyright Act"), against Brooklyn Music, Ltd. ("BML") and Frank Babar ("Babar") (collectively "defendants"). Upon the defendants' failure to answer or otherwise respond to the complaint or to the amended complaint, your Honor referred the matter to the undersigned to conduct an inquest and to report and recommend the amount of damages, if any, to be awarded to the plaintiffs against the defendants.

The Court directed the plaintiffs to file and serve proposed findings of fact and conclusions of law and an inquest memorandum setting forth their proof of damages, the costs of this action, and their attorney's fees. The defendants were directed to file and serve opposing memoranda, affidavits and exhibits, as well as any alternative findings of fact and conclusions of law they deemed appropriate. The defendants were also directed to state whether they wanted a hearing to be held for the purpose of examining witnesses.

In support of their request for damages, the plaintiffs submitted: (1) an inquest memorandum; (2) the declaration of Barrera, attesting to the facts in the plaintiffs' inquest memorandum; (3) the declaration of an expert in the area of licensing stock photographic works, Gary Elsner ("Elsner"), opining on the plaintiffs' actual damages ("Elsner Declaration"); and (4) the declaration of the plaintiffs' attorney, Nicholas A. Penkovsky ("Penkovsky Declaration").

The defendants failed to respond to the Court's directive.

The plaintiffs' submissions aver that they are entitled to $1,512,000.00 in actual damages and profits attributable to the

defendants' infringement, as well as to unspecified costs they incurred in bringing this action. Additionally, the plaintiffs seek an order permanently enjoining the defendants from further distribution of the Green Silo # 3 photograph ("Photograph"), which is the subject of this action, and an order that the defendants destroy any infringing articles in their possession.

For the reasons set forth below, I recommend that the plaintiffs be awarded $27,000.00 in actual damages, and that the plaintiffs' application for injunctive relief be granted.

## II. BACKGROUND AND FACTS

Based on submissions by the plaintiffs, the amended complaint filed in the instant action—the factual allegations of which, perforce of the defendants' default, must be accepted as true, except as they relate to damages, see *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)—and the Court's review of the entire court file maintained in this action, the following findings of fact are made:

The plaintiffs are visual artists residing in the state of New York. Defendant BML is a corporation organized and existing under the laws of the state of New York, with its principal office in Kings County. K-tel International, Inc. ("K-tel"), a defendant dismissed from the action following a negotiated disposition of the claims asserted against it, is a Minnesota corporation with an office in New York County. At times relevant to this action, K-tel and BML were each engaged in the business of producing, marketing, distributing, and selling music recordings. Defendant Babar was BML's president.

In August 1997, the plaintiffs jointly created the Photograph. It is an original abstract photograph of an aged agricultural silo located in Vermont. The Photograph is part of a collection of the plaintiffs' photographs that are available for sale to collectors through art galleries. In November 1997, the plaintiffs showed the Photograph to a designer as part of a portfolio of the work the plaintiffs had created jointly. The plaintiffs left the Photograph with the designer for review only; they did not authorize its reproduction.

In an agreement dated June 24, 1997 (the "1997 Agreement"), K-tel retained Babar as a consultant. At the conclusion of the 1997 Agreement's one-year term, K-tel, Babar and BML entered into an agreement ("1998 Agreement") under which: 1) K-tel was to provide funding of at least $60,000.00 per month to BML for a period of two years; 2) Babar was to be employed exclusively by BML; and 3) K-tel acquired certain options to purchase a controlling interest in BML. In pertinent part, the preamble to the 1998 Agreement states the following:

\* \* \* \* \* \*

[ . . . ] K–TEL and BML have previously and will continue to enter into agreements with regard to the exploitation of BML Assets ("Other K–TEL Agreements") including, without limitation, with regard to the following:

a) the distribution by K–TEL of albums produced, recorded, owned or controlled by BML or artists with whom BML has agreements; and

b) the licensing by K–TEL of masters, entire albums and musical compositions produced, recorded, owned or controlled by BML; and

c) the representation of BML by K–TEL for the purposes of licensing BML Assets to third parties.

Penkovsky Declaration, Exh. 2, sub-Exh. C, p. 1.

In late 1998, the plaintiffs discovered a compact disc entitled "Digital Empire" ("CD") while at a record store. The CD featured the Photograph on its cover. Shortly thereafter, the plaintiffs learned that the design of the CD divider contained within the CD package also incorporated the Photograph, and that BML had used the Photograph on its website in order to promote sales of the CD. None of these uses of the Photograph was authorized by the plaintiffs.

On March 29, 1999, the plaintiffs sent a letter to the defendants demanding that they cease and desist from any further use of the Photograph. Thereafter, the plaintiffs registered their copyright in the Photograph with the United States Copyright Office, which issued the plaintiffs a certificate of copyright registration on April 1, 1999. On March 23, 2000, the parties to the 1998 Agreement terminated that agreement.

The plaintiffs commenced this action on December 8, 2000. They contend that the defendants reproduced, published, displayed and distributed the Photograph without authorization from the plaintiffs, and also created derivative works from the Photograph, all of which activity infringed the plaintiffs' copyright in the Photograph, in violation of the Copyright Act. Pursuant to 17 U.S.C. § 504(b) (" § 504(b)"), the plaintiffs seek actual damages and to recover any profits earned by the defendants that are attributable to the infringement of the Photograph. The plaintiffs claim that the appropriate measure of their actual damages is a reasonable license fee for the defendants' use of the Photograph. They maintain that amount is $72,000. The plaintiffs also contend that the appropriate measure of the defendants' profit is the sum of the payments defendant BML allegedly received from K-tel pursuant to the 1998 Agreement, $1,440,000.00. The

plaintiffs do not specify their litigation costs.

### III. CONCLUSIONS OF LAW

 As noted above, upon the entry of a party's default in an action, the party is deemed to have admitted all factual allegations in the complaint, except as they relate to damages. *See Au Bon Pain Corp.*, 653 F.2d at 65. However, a court has discretion to determine whether the facts alleged in a complaint state a legally sufficient cause of action. *See, e.g., In re Crazy Eddie Sec. Litig.*, 948 F.Supp. 1154, 1160 (E.D.N.Y.1996). Additionally, the amount of damages must be established by the plaintiff in a post-default inquest, "unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974). In conducting an inquest, a court need not hold a hearing "as long as it [has] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997). The court may rely on affidavits or documentary evidence in evaluating the fairness of the sum requested. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.1993).

*Actual Damages*

 The Copyright Act states, in pertinent part: "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by [§ 504(b)]; or (2) statutory damages, as provided by subsection [17 U.S.C. § 504(c)]." 17 U.S.C. § 504(a) ("§ 504(a)"). Actual damages are primarily measured by "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *See Fitzgerald*

*Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,* 807 F.2d 1110, 1118 (2d Cir.1986). In appropriate circumstances, actual damages may be taken to be a reasonable license fee—that is, the fair market value of a license authorizing defendants' use of the copyrighted work. *See On Davis v. The Gap. Inc.,* 246 F.3d 152, 164–68 (2d Cir. 2001).

■ Typically, the plaintiffs sell prints of their work through art galleries and do not sell or license their work for commercial purposes. Since they were unfamiliar with the market for such licensed work, the plaintiffs retained Elsner, to assess the fair market value of a license to use the Photograph as the defendants did.

Fed.R.Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

■ Furthermore, the Supreme Court has explained that "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is to be performed by a court. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993). Each step of an expert's analysis must be reliable in order for the expert's opinion testimony to be considered in a judicial proceeding. *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d. Cir.2002). However, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* Although expert testimony should be excluded if it is "speculative or conjectural," if it is "based on assumptions so unrealistic and contradictory as to suggest bad faith," or if it is "in essence an apples and oranges comparison," "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *See Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir.1996) (internal quotation marks omitted).

Elsner has extensive work experience in the stock photograph industry,[1] extending over a period of more than thirty-five years. As a senior executive for several stock photography agencies and as the president of his own consulting company, Elsner has handled more than three hundred copyright infringement claims for both individual photographers and stock photography agencies. By virtue of his knowledge and experience in the field, the Court finds Elsner has sufficient knowledge, skill and experience in the stock photograph industry to qualify him to provide an opinion about a reasonable license fee for the defendants' use of the Photograph.

■ The calculation of a reasonable license fee for use of a photograph may be based on such factors as the type of use, size of use, and circulation. *See Baker,* 254 F.Supp.2d at 353–354. In his analysis, Elsner also considers the type of media in which the Photograph is reproduced, the size of the image of the Photograph in

---

1. "Stock photograph" refers to a photograph that is already in existence, as opposed to a newly created photographic work that a photographer is commissioned by a client to produce. *See Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 353 (S.D.N.Y.2003).

relation to the materials in which it is used, the geographic scope of the market in which the infringing use was made, and whether the use of the photograph contains a "credit line" that completely and accurately identifies the author(s) of the photograph.

Based on these considerations and on his review of the documents, photographs, and websites relevant to this action, Elsner assesses that a reasonable license fee, assuming the use of a complete and accurate credit line, would include: 1) $2,500 for the use of the Photograph on the front and back covers of the CD, assuming worldwide distribution of not more than 100,000 CDs; 2) $3,500 for the use of the Photograph in advertisements of the CD, including those in print and on the Internet; 3) $1,000 for the use of the Photograph on the CD divider; and 4) $2,000 for the four uses within the booklet that accompanied the CD. Accordingly, Elsner computes a license fee of $9,000 ("base license fee"). Elsner states that this figure should be augmented to account for the fact that the defendants' uses of the Photograph credit Barrera only partially— with the statement "Photography by Javier"—and do not credit Burgos at all. According to Elsner, it is customary in the music industry to triple the license fee for a photograph if credit is not properly given to the photographer(s). Augmented on this basis, the license fee would be $27,000 ("augmented license fee").

The factors used by Elsner to compute the base license fee are ones that reliably could be expected to determine the value of a license for use of a stock photograph. Moreover, the inclusion of a credit line would likely have significant value to a photographer, in view of the additional notoriety and business opportunities such credit might bring. Conversely, it is reasonable to conclude that a photographer would charge a significantly higher fee to a licensee who wishes to omit a credit line from its usage of a photograph. Elsner's application of all these factors was informed by his review of pertinent materials in this action. Accordingly, the Court finds that Elsner computed the base and augmented license fees through the application of reliable principles and methods, and with sufficient bases in fact.

■ Elsner opines that license fee should be augmented further—by $45,000, five times the base license fee—to account for the fact that the defendants' use of the Photograph was unauthorized. He states that it is the custom and practice in the photography industry for photographers and stock photography agencies to charge such an additional fee when they discover an unauthorized use of photographs whose copyrights they hold. Elsner further explains:

> Most agencies will accept payment of a fee multiplied by either three or four times the customary license fee *if the matter is immediately settled* when brought to the attention of the infringing party. On occasion, a multiplier of not less than ten times the customary license fee or an amount equal to the limits of the statutory damages provided under copyright law is demanded *when litigation has to be commenced in order to resolve the issues of the infringement.*

Elsner Declaration, ¶ 11 (emphases added).

■ Since the plaintiffs have applied for actual damages, pursuant to § 504(a) & (b), this additional $45,000 may only be awarded if it represents compensation for an injury caused by the defendants' infringing activities. The additional $45,000, which allegedly reflects the fact that defendants' use of the Photograph was unauthorized, cannot logically represent part of the fair market value of a license *authoriz-*

*ing* such use. Neither Elsner's declaration nor any of the other materials before the Court identify any other injury cognizable under §§ 504(a) & (b) for which the additional $45,000 would provide compensation. The portion of Elsner's declaration quoted above suggests that a photographer or stock photography agency might demand such an additional fee in order to avoid the need to resort to litigation to resolve an infringement dispute. However, the injuries compensable through actual damages, as contemplated by §§ 504(a) & (b), do not encompass the need to engage in litigation. Other sections of the Copyright Act govern the recovery of litigation expenses for copyright infringement actions. *See* 17 U.S.C. §§ 412, 505 (providing for recovery of litigation costs and a reasonable attorney's fee when certain copyright registration requirements are met). It would be inappropriate to circumvent the scheme put in place by those other provisions of the Copyright Act by awarding such compensation under the rubric of actual damages. The plaintiffs' application for damages includes a separate request for the award of litigation costs, and that request is addressed below. Accordingly, the Court finds that there is no basis in the record before the Court for the additional $45,000 in actual damages suggested by the Elsner Declaration.

In light of the foregoing, the Court finds that the plaintiffs have established actual damages of $27,000, the reasonable license fee for the defendants' use of the Photograph.

*Profits from the Defendants' Infringement*

■ In addition to actual damages, a copyright owner electing to seek damages under § 504(b) is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The statute provides further: "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* However, for the purposes of § 504(b), "gross revenues" includes only "gross revenues reasonably related to the infringement, not unrelated revenues." *On Davis*, 246 F.3d at 160; *see also Fournier v. Erickson*, 242 F.Supp.2d 318, 327 (S.D.N.Y.2003) (holding that in a copyright action alleging that advertisements for one of defendant's software product lines made infringing use of plaintiff's work, plaintiff may offer evidence of defendant's gross revenues stemming from sales of that software product line, but not from sales of defendant's other products and services).

The plaintiffs contend that the monthly payments provided for in the 1998 Agreement are gross revenues of BML attributable to the defendants' infringement. However, under circumstances that are unclear from the record before the Court, the 1998 Agreement was terminated by the parties prior to the end of the two-year period during which contractual monthly payments were to be made. This leaves considerable doubt about what portion of the contractual monthly payments were actually made to BML. Moreover, the plaintiffs have not established that monthly payments made pursuant to the 1998 Agreement were gross revenues reasonably related to the infringement, as required by *On Davis*. While the amount of the payments is partly a function of the amount of royalties due to BML from K-tel for sales of BML albums licensed to K-tel, the 1998 Agreement suggests that the CD was just one of many music albums that K-tel licensed from BML since at least 1997. Moreover, the 1998 Agree-

ment expressly states that K-tel would continue to license and distribute additional recordings owned by BML. More significantly, the principal object of the 1998 Agreement was to grant K-tel certain rights entitling it to purchase a controlling interest in BML. The contention that the funding that K-tel was to provide to BML in exchange for such rights represents gross revenues reasonably related to the sale of the CD is not plausible.

For the foregoing reasons, the Court finds that any payments made to BML by K-tel pursuant to the 1998 Agreement are not gross revenue within the meaning of § 504(b). Accordingly, the plaintiffs' application for an award of profits attributable to the defendants' infringement of the Photograph should be denied.

*Attorney's Fee and Costs*

The Copyright Act authorizes the court, in its discretion, to "allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. "Except as otherwise provided by [the Copyright Act], the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* However, with exceptions not relevant to this action, a plaintiff may not recover an attorney's fee if "(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.

▮ In this action, the defendants' infringement began no later than 1998, prior to the effective date of the plaintiffs' registration of their copyright in the Photograph, April 1, 1999. Thus, if the Photograph was unpublished at the time the infringement commenced, the plaintiffs are ineligible for recovery of their attorney's fee. If, on the other hand, the Photograph was published prior to the time the infringement commenced, such publication would necessarily have occurred more than three months prior to the effective date of the copyright registration. In this case, too, the plaintiffs cannot recover their attorney's fee.

▮ Additionally, the record does not include any contemporaneous time records, invoice(s) of the specific services provided or charges levied by the plaintiffs' counsel, or any other basis upon which the Court might evaluate the amount or reasonableness of the plaintiffs' attorney's fee. In the Second Circuit, a party seeking an award of an attorney's fee must support that request with contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983). Attorney's fee applications that do not contain such supporting data "should normally be disallowed." *Id.* at 1154.

The record is also devoid of any evidence of the costs the plaintiffs incurred in bringing this action. Accordingly the Court has no basis upon which to fix the amount of costs that the plaintiffs might recover.

Accordingly, the plaintiffs' application for an award of costs and an attorney's fee should be denied.

*Injunction*

▮ The Copyright Act provides that a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "Generally, a plaintiff must show the

threat of [a] continuing violation in order to be entitled to injunctive relief." *Peer Int'l Corp. v. Luna Records, Inc.,* 887 F.Supp. 560, 570 (S.D.N.Y.1995). Injunctive relief may also include an order that infringing articles in a defendant's possession be destroyed. *See, e.g., id.*

 In this action, the defendants' failure to respond to the plaintiffs' assertion of their rights under the Copyright Act suggests that there is a significant threat of continuing infringement of the Photograph by the defendants. Therefore, the Court finds that injunctive relief is warranted.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that: 1) the plaintiffs be awarded actual damages in the amount of $27,000.00; 2) the plaintiffs' application for an award of profits, attorney fees and costs be denied; 3) the defendants be permanently enjoined from making any further infringing use of the Photograph; and 4) the defendants be ordered to destroy any articles in their possession that make infringing use of the Photograph.

## V. FILING OF OBJECTIONS TO THIS REPORT AND REC- OMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Robert L. Carter, 500 Pearl Street, Room 2220, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Carter. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 146, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

\* \* \* \* \* \*

The plaintiffs shall serve a copy of this Report and Recommendation upon the defendants and submit proof of service to the Clerk of Court.

June 30, 2004.