**VICTORIA CRUISES, INC., Plaintiff,**

v.

**CHANGJIANG CRUISE OVERSEAS TRAVEL CO.; Yangtze Cruises, Inc.; and John Does 1–10, Defendants.**

**Case No. 03–CV–3146(FB)(MDG).**

United States District Court,
E.D. New York.

Dec. 31, 2008.

Ann Seelig, Esq., Wu & Kao, New York, NY, for the Plaintiff.

### MEMORANDUM AND ORDER

BLOCK, Senior District Judge:

Following the failure of defendant Yangtze Cruises, Inc. ("Yangtze") to appear through counsel, the Court granted plaintiff's motion for default judgment on its trademark infringement claim against

Yangtze and referred the matter to the assigned magistrate judge for a determination of the relief to be awarded.[1] On August 20, 2008, Magistrate Judge Go issued a report and recommendation ("R & R") recommending that plaintiff be awarded a total of $7,371,329.25 in damages and that its request for injunctive relief be denied.

The R & R recited that "[o]bjections to the Report and Recommendation must be filed ... by September 8, 2008," and that "[f]ailure to file objections within the time specified waives the right to appeal." R & R at 265. A copy of the R & R was sent electronically to plaintiff's counsel and by overnight mail to Yangtze's last known address. *See id.* To date, no objections have been filed.

■ If clear notice has been given of the consequences of failure to object, and there are no objections, the Court may adopt the R & R without *de novo* review. *See Thomas v. Arn,* 474 U.S. 140, 149–50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."). The Court will excuse the failure to object, however, and conduct *de novo* review if it appears that the magistrate judge may have committed plain error. *See Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 174 (2d Cir.2000).

Since there is nothing in Magistrate Judge Go's thorough R & R that suggests plain error, the Court adopts it without *de novo* review.

**SO ORDERED.**

1. Plaintiff's claims against the remaining defendants have been dismissed without preju-

*REPORT & RECOMMENDATION*

GO, United States Magistrate Judge:

Plaintiff Victoria Cruises, Inc. ("Victoria") brings this action against defendants Changjiang Cruise Overseas Travel Co. ("Changjiang"), Yangtze Cruises, Inc. ("Yangtze"), and John Does 1–10 (collectively "defendants"), alleging trademark infringement, trademark dilution and unfair competition under federal and state law. The Honorable Frederic Block dismissed Victoria's claims against Changjiang and John Does 1–10 pursuant to Victoria's stipulation to withdraw its complaint against those defendants for lack of service. *See* ct. doc. 51. Judge Block subsequently granted plaintiff's motion for default judgment against Yangtze and referred to me for report and recommendation the relief to be awarded. *See* ct. doc. 59.

*PROCEDURAL BACKGROUND*

On June 26, 2003, plaintiff commenced this action seeking injunctive relief and damages against Yangtze, Changjiang and John Does 1–10 for trademark infringement, trademark dilution and unfair competition under federal and state law. *See* ct. doc. 1.

Plaintiff later moved for a preliminary injunction. At a hearing held before the Honorable A. Simon Chrein on September 22, 2003, the parties entered into a stipulation that Yangtze "agree[d] to cease use and ... never again use the name, the full name, Victoria Cruises or the dragon logo used by ... Victoria Cruises." Transcript of Hearing held on September 22, 2003 (ct. doc. 21) at 18.

On January 27, 2005, Judge Block denied plaintiff's motion for summary judg-

dice for failure to perfect service.

ment because plaintiff had not met its burden of proving that there was no genuine issue of fact "with respect to whether Yangtze's use of the ship names 'Victoria' and 'Victoria 1' through 'Victoria 7' is likely to cause confusion with plaintiff's mark." Ct. doc. 51 at 1–2. Judge Block also noted that plaintiff had stipulated to withdrawing its complaint against Changjiang and John Does 1–10 for lack of service. *See* ct. docs. 50, 51. In addition, Judge Block warned that Yangtze must obtain counsel by February 28, 2005 or risk default judgment. *See* ct. doc. 51 at 2. On October 12, 2005, Judge Block granted plaintiff's motion for default and referred to me to report and recommend on damages. *See* ct. doc. 58.

## FACTUAL BACKGROUND

The pertinent facts are undisputed and are set forth in the Verified Complaint ("Compl.") (ct. doc. 1), the Declaration of Anne Seelig dated December 21, 2005 ("Seelig Decl.") (ct. doc. 64), the Affidavit of James Pi, the President of Victoria, dated June 18, 2007 ("Pi Aff.") (ct. doc. 71) and the evidence and testimony received at a hearing held on July 16, 2007.

Victoria is a New York corporation and has been operating travel tours and cruises on the Yangtze River, China since 1994. Compl. at ¶ 8; Pi Aff. at ¶ 2; Transcript of Hearing held on July 16, 2007 ("H. Tr.") at 8, 41–42. Victoria is the owner of a trademark, "Victoria Cruises," U.S. Trademark Registration No. 1,904,671, for cruise line services featuring cruises in the Orient. *See* Compl. at ¶ 7, Exh. A. However, that registration was cancelled on July 20, 2002. *See* Pi Aff. at ¶ 8; http://tess2.uspto.gov/bin/_showfield?f=doc&state=sos7d.2.4. Victoria then filed an application for registration of the identical mark on March 11, 2003 and was issued a certificate of registration for U.S. Trademark Registration No. 3,128,637 on August 15, 2006. *See* Pi Aff. at ¶ 9, Exh. D.

Victoria has advertised and used its mark throughout the United States since January 1994. *See* Compl. at ¶ 9. Through widespread public acceptance and recognition, plaintiff's mark has developed secondary meaning and significance in the minds of the purchasing public. *Id.* Victoria is the largest cruise line operating in the Yangtze River, China. Pi Aff. at ¶ 2.

Yangtze is a New York corporation with its principal place of business at 566 7th Avenue, Suite 506, New York, New York 10018. Compl. at ¶ 5. Beginning in 2003, Yangtze advertised, promoted, marketed and sold cruise line tickets in the United States under the name "Victoria Cruises." H. Tr. at 9, 11; Compl. at ¶ 11. The label and trade dress used by plaintiff and Yangtze contain virtually the same dragon logo, colors, background and layout. Compl. at ¶ 13.

In 2002, prior to commencement of the infringing sales by Yangtze, Victoria reported gross sales of $27,827,296 for its tours. H. Tr. at 11; Pl.'s Ex. 2. Victoria's gross sales dropped beginning 2003—to $4,613,846 in 2003, $10,716,177 in 2004, $13,992,711 in 2005 and $26,734,827 in 2006. H. Tr. at 17, 21, 22, 23; Pl.'s Ex. 2, 3, 4 and 6. According to Mr. Pi, some of the decline in revenues in 2003 was attributable to a general drop in the number of tourists visiting China due to SARS. H. Tr. at 24. Sales increased somewhat in 2004, but plaintiff had to reduce ticket prices that year in order to remain competitive with the lower priced cruises offered by defendant. *Id.* at 25, 32.

The cruises that Victoria offers are overseen by an American cruise service department on board and covered by international insurance. *Id.* at 42. Mr. Pi testified that Victoria received complaints from many returning American tourists who believed they had purchased tickets for Victoria cruises that did not offer these ser-

vices. *Id.* at 42, 43. He believes through word of mouth that Victoria was able to persuade customers that Victoria's cruises were different from those offered by Yangtze, resulting in increased sales in 2005. *Id.* at 43.

### DISCUSSION

■ A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. *Au Bon Pain*, 653 F.2d at 65–66. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R.Civ.P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir.1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain*, 653 F.2d at 65.

*Liability of Defendant*

■ The Lanham Act prohibits the use in commerce, without consent, of any "registered mark in connection with the sale, distribution or advertising of any goods," in a way that "is likely to cause confusion."

15 U.S.C. § 1114(1)(a). The statute also forbids the infringement of unregistered common law trademarks. *See Time, Inc. v. Petersen Publishing Co. LLC*, 173 F.3d 113, 117 (2d Cir.1999); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir.1988); 15 U.S.C. § 1125(a)(1). To prevail on a trademark infringement claim under either provision, plaintiff must demonstrate that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Time*, 173 F.3d at 117; *Genesee Brewing*, 124 F.3d at 142.

■ A mark is automatically entitled to protection under the Lanham Act when it is an "inherently distinctive" mark, as opposed to a "merely descriptive" mark. *See Time*, 173 F.3d at 117; *Genesee Brewing*, 124 F.3d at 143; 15 U.S.C. § 1052(e), (f); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). A descriptive mark qualifies for protection only if it has acquired secondary meaning, i.e., consumers have come to associate it with the user of the mark. *See Time*, 173 F.3d at 117; *Genesee Brewing*, 124 F.3d at 143; 15 U.S.C. § 1052(e), (f); *see also Two Pesos*, 505 U.S. at 768–69, 112 S.Ct. 2753. Registration of a mark is *prima facie* evidence of the validity of the mark, the registrant's ownership of the mark and the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration certificate. *See* 15 U.S.C. §§ 1115(b), 1057(b).

■ Although plaintiff is not entitled to the statutory presumption of validity during the period the mark was not registered between July 2002 and August 2006, the applicability of the presumption for preceding and subsequent periods weigh heavily in supporting the validity of the

mark for that interim period. In any event, plaintiff's allegations establish that its mark is inherently distinctive and has acquired distinctiveness through its use, advertisement and promotion throughout the United States. *See* Compl. at ¶¶ 7–16. Further, plaintiff's allegations and testimony demonstrate that Yangtze has infringed plaintiff's trademark by advertising, promoting, marketing and selling services, using a name and logo that are strikingly and confusingly similar to plaintiffs' mark. *See id.* at ¶¶ 11, 13–16.

*Determination of Damages*

Under the Lanham Act, a prevailing plaintiff is generally entitled to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. *See* 15 U.S.C. § 1117(a). Pursuant to section 1117(a)(2), plaintiff's damages "may include compensation for lost sales or revenue." *Int'l Star Class Yacht Racing Ass'n v. Tommy,* 80 F.3d 749, 753 (2d Cir.1996). Statutory damages are available only for counterfeiting of a registered mark. *See* 15 U.S.C. §§ 1116(d), 1117(c). Since plaintiff seeks damages sustained between 2003 and 2006, a period during which its mark was unregistered, statutory damages are unavailable. *Cf. Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.,* 592 F.Supp. 127, 136 & n. 7 (E.D.Pa.1984) (prior to amendment of section 1117 which included damages for unregistered marks, denying damages where alleged infringement took place after application for registration of mark but

prior to issuance of certificate of registration); *see also IMAF, S.p.A. v. J.C. Penney Co., Inc.,* No. 86 CV 9080, 1989 WL 54128, at *3 (S.D.N.Y. May 15, 1989) (patent infringement taking place after application was filed but before patent issued was not actionable). However, plaintiff may recover actual damages for infringement of an unregistered mark. *See* 15 U.S.C. § 1117(a).

 Generally, "in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 493 (2d Cir.1998); *see also George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir.1992). A defendant's default may be considered as evidence of willful infringement. *See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.,* No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y.2003).

Mr. Pi, the President of Victoria, testified that Yangtze's customers have complained to his employees about defendant's services in apparent confusion that the two companies are related because of their similar names.[1] H. Tr. at 43, 47–49. Such evidence of mistaken beliefs by customers

---

**1.** This testimony is admissible under Fed. R.Evid. 803(3). *See Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1003–04 (2d Cir.1997) (admission of sales manager's testimony of customer confusion was proper to show the declarant's then-existing state of mind); *Rosenthal A.G. v. Ritelite, Ltd.,* 986 F.Supp. 133, 143–44 (E.D.N.Y.1997) (declaration providing anecdotal evidence of customer confusion was admissible to show declarant's then-existing state of mind); *accord*

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 n. 10 (5th Cir.1982) (testimony by plaintiff's employees that customers called for defendant company was admissible to show confusion in minds of declarants); *Microware Sys. v. Apple Computer,* 126 F.Supp.2d 1207, 1211 n. 2 (S.D.Iowa 2000) (e-mails admissible on issue of consumer confusion as indicative of unavailable declarant's then existing views).

demonstrates actual confusion. *See Fun–Damental Too,* 111 F.3d at 1005 (relying on testimony that some customers were confused); *Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 963–64 (2d Cir.1996) (finding that misdirected phone calls and other evidence that customers believed there to be a connection between plaintiff and defendant demonstrated actual confusion). In any event, the Court may presume customer deception based on Yangtze's willful infringement, which is established by its default in this action.

■ Plaintiff seeks damages for lost profits under 15 U.S.C. § 1117. *See* ct. doc. 67 at 2. Lost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Excelsior Trading Corp.,* 07–CV–3224, 2007 WL 2406887, at *14 (E.D.N.Y. Aug. 16, 2007); *GTFM,. Inc. v. Solid Clothing, Inc.,* 215 F.Supp.2d 273, 305 (S.D.N.Y.2002). Because it is difficult to determine lost sales caused by infringing conduct, *George Basch,* 968 F.2d at 1539, the Court may "engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing." *See PPX Enters., Inc. v. Audiofidelity Enters.,* 818 F.2d 266, 271 (2d Cir.1987); *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 526 (10th Cir.1987) ("A defendant whose wrongful conduct has caused the difficulty in assessing damages cannot complain that the damages are somewhat speculative"). Any doubts regarding the amount of damages must be resolved against the infringer. *See Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1065 (Fed.Cir.1983).

In order to determine lost profits based on declining revenue, a pre-infringement "base line" must be established to predict what revenue plaintiff would have generated absent the infringement. *See Flexitized, Inc. v. Nat'l Flexitized Corp.,* 335 F.2d 774, 779 (2d Cir.1964) (approving use of evidence of sales before and after breach of exclusive distributorship contract to calculate lost profits); *Lindy Pen Co. v. Bic Pen Corp.,* 14 U.S.P.Q.2d 1528, 1532 (C.D.Cal.1989) (denying damages for failure of proof on an appropriate base period of sales to compare with the infringement period), *aff'd,* 982 F.2d 1400 (9th Cir.1993); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.79 (4th ed. 2002). In addition to proving the actual profits lost, plaintiff must also prove that defendant actually caused the loss of those profits. *See Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.,* 349 F.2d 389, 392 (2d Cir.1965). In proving causation, a plaintiff "does not have to negate every conceivable intervening factor which might have caused a decline in sales." 5 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:79. Rather, "[p]roof of a general decline in sales or a disruption of anticipated business growth following the defendant's misconduct can be sufficient in some cases to justify an inference of causation." *See Restatement (Third) of Unfair Competition* § 36 cmt. h (1995). Likewise "[p]roof of a decline in sales combined with evidence tending to discount the importance of other market factors, such as evidence of positive business conditions and the success of similar businesses not subject to the defendant's tortious conduct, can be sufficient to establish a causal connection between the plaintiff's decline in sales and the misconduct of the defendant". *Id.*

Plaintiff primarily relies on its federal income tax returns as evidence of its lost

profits. However, plaintiff is incorrect that damages should be calculated based on its gross profits. Rather, the accepted method of calculating lost profits is to deduct overhead expenses and costs to calculate net profits. *See Lawton v. Melville, Corp.*, 116 F.3d 1472 (Table), 1997 WL 346129, at *2 (2d Cir.1997) (overhead is an appropriate deduction in determining lost profits); *Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 103 (2d Cir.1989) (reversing judgment based on gross profits and remanding for recalculation of compensatory damages based on net profits); *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir.1983) (in computing lost profits, costs necessary to generate income should be deducted from sales revenue); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d Cir.1970) (in determining profits for trademark liability, deducting overhead, operating expenses and income tax from net sales); *Nu–Chem Labs., Inc. v. Dynamic Labs., Inc.*, No. 96–CV–5886, 2001 WL 35981560, at *9–*10 (S.D.N.Y. Mar. 30, 2001) (calculating lost profits by deducting costs and overhead from gross profits as evidenced by tax returns).

I recommend using the 2002 figures as the pre-infringement baseline for determination of profits lost as a result of Yangtze's infringement. In 2002, plaintiff's federal income tax return reflects sales in the amount of $27,827,296 and expenses and overhead in the amount of $24,505,694.[2] *See* Pl.'s Exh. 2. Accordingly, plaintiff's profit margin in 2002 was 12 percent of its sales. I recommend awarding damages based on 15 percent of lost sales since the profit margin on the additional sales in subsequent years is likely to be higher than the reported sales and will also account for a decrease in prices that plaintiff charged in order to compete with Yangtze.

■ At the hearing, Mr. Pi admitted that lost sales in 2003 were also attributable to another cause—the SARS epidemic in China. Although plaintiff has not offered any evidence as to the extent to which SARS impacted its business in 2003, statistics published by the International Trade Administration of the United States Department of Commerce reflect a 22% decrease in United States residents traveling to China from 2002 to 2003. *See* http://www.tinet.ita.doc.gov/view/f-2006-11-001/index.html.[3] Absent any other evidence regarding SARS's effect on American tourism in China, I recommend applying a 22% reduction to plaintiff's lost sales in 2003, resulting in lost sales of $18,106,491.

■ I also recommend that lost profits be awarded from 2003, when defendant began its infringing activities, through 2005. Although Mr. Pi claimed in his prehearing affidavit that the defendant has continued to the present "to gain customers through infringing use of plaintiff's mark," ct. doc. 71 at ¶ 4, he admitted at the hearing that he was not aware of any infringing use of Victoria's marks by Yangtze after it stipulated to entry of an injunction in 2003. *See* H. Tr. at 49. Although plaintiff has encountered instances of infringing use of plaintiff's mark by others, plaintiff is not aware of any role of

---

**2.** The compensation paid to plaintiff's officers is not included in the calculation of costs and overhead expenses since plaintiff is a subchapter S Corporation owned by Mr. Pi and his wife, Katy Pi. *See* H. Tr. at 54, 55; Pl.'s Exs. 2, 3, 4, 6 and 7.

**3.** The Court can take judicial notice of government statistics. *See United States v. Es-* *quivel*, 88 F.3d 722, 726–27 (9th Cir.1996) (taking judicial notice of census data compiled by the United States Department of Commerce); *City Bank Farmers' Trust Co. v. United States*, 5 F.Supp. 871, 873 (S.D.N.Y. 1934) (taking judicial notice of statistics published by Commerce Department); Fed. R.Evid. 201.

Yangtze in such infringement. *Id.* at 47–51. However, the economic effects of defendant's prior infringing conduct may have continued for some time thereafter since customer confusion was not likely to have stopped immediately. As corroborated by Mr. Pi, Victoria was slowly able to persuade customers by word-of-mouth that the cruises taken by complaining customers were not the same as those his company sold and, as a result, to increase sales in 2005. H. Tr. at 43. Thus, despite the absence of admissible evidence of infringing conduct by defendant after 2003, I recommend an award of damages for the two subsequent years, particularly since defendant's default has deprived plaintiff of any meaningful discovery to prove a causal connection in damages. *Cf. Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118 (2d Cir.1986) ("Where a difficulty faced in calculating damages is attributable to the defendant's misconduct, some uncertainty may be tolerated.").

In accordance with the foregoing, I recommend an award of damages for total lost profits of $7,371,329.25, calculated as follows:

| Year | A<br>Actual Sales | B<br>Lost Sales<br>(2002 Sales—Actual Sales) | C<br>Lost Profits<br>B × 15% |
|---|---|---|---|
| 2002 | $27,827,296 | | |
| 2003 | 4,613,846 | $18,106,491 * | $2,715,973.65 |
| 2004 | 10,716,177 | 17,111,119 | 2,566,667.85 |
| 2005 | 13,992,711 | 13,904,585 | 1,085,687.75 |
| **TOTAL LOST PROFITS FROM 2003 TO 2005** | | | **$7,371,329.25** |

* This figure represents 78% of the difference in sales between 2002 and 2003.

■ In addition to its lost profits, plaintiff seeks damages for defendant's profits from its infringing sales. *See* H. Tr. at 30–31, 35–36. However, awarding plaintiff both defendant's profits and its own lost profits based on the same sales would constitute an impermissible double recovery. *See Nintendo of Am., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir.1994); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 208 U.S.P.Q. 421, 427 (S.D.N.Y.1980); 5 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:73.

■ Finally, plaintiff seeks additional monetary damages for loss of good will. H. Tr. at 34–36. However, loss of good will generally "is not accurately compensable by monetary damages." *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 8 (2d Cir.1996); *see Koon Chun Hing Kee Soy*, 2007 WL 2406887, at *1. Plaintiff has offered no evidence beyond mere speculation as to the value of any lost goodwill. *See Lawton v. Melville Corp.*, 116 F.3d 1472 (Table), 1997 WL 346129, at *2 (2d Cir.1997) (affirming denial of damages award for lost goodwill that would have been purely speculative); *Toltec Fabrics, Inc. v. August Inc.*, 29 F.3d 778, 780 (2d Cir.1994). Therefore, I recommend denying plaintiff's request for damages based on lost goodwill. In any event, since I am recommending damages for lost profits through 2005, even though there is no evidence that defendant continued its infringing activities in 2005, the damages recommended for this larger period amply accounts for any profit or loss of good will and other residual effect of defendant's conduct.

In sum, I recommend awarding plaintiff damages for its lost profits in the amount of $7,371,329.25.

*Injunctive Relief*

Although the parties stipulated in January 2003 that Yangtze would not use plaintiff's mark in the future, plaintiff seeks an injunction against defendant. H. Tr. at 46.

██ "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.,* No. CV–05–3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting *King v. Nelco Indus., Inc.,* No. 96–CV–4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)).

██ Under section 1116(a) of the Lanham Act, the court may grant an injunction to prevent the infringement of a trademark. *See* 15 U.S.C. § 1116(a). To obtain a permanent injunction, plaintiff must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits. *See Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *TCPIP Holding Co., Inc. v. Haar Communications Inc.,* 244 F.3d 88, 92 (2d Cir.2001); *N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir.1999). The movant must also show the threat of a continuing violation in order to obtain injunctive relief. *See Barrera v. Brooklyn Music, Ltd.,* 346 F.Supp.2d 400, 412–13 (S.D.N.Y.2004); *Boisson v. Banian Ltd.,* 280 F.Supp.2d 10, 15 (E.D.N.Y.2003).

██ Here, there is no clear evidence that defendant Yangtze is responsible for any ongoing infringement. In fact, Mr. Pi testified that defendant Yangtze is no longer conducting business. H. Tr. at 48–49, 50–51. Furthermore, plaintiff fails to present any evidence of a relationship between Yangtze and Changjiang. *Id.* at 50. Absent any threat of continuing infringement, plaintiff is not entitled to injunctive relief.

*Attorneys' Fees*

Plaintiff waives its request for attorneys' fees. *See* Pi Aff. at ¶ 11.

### CONCLUSION

For the foregoing reasons, I recommend that plaintiff be awarded damages in the amount of $7,371,329.25 and its request for injunctive relief be denied.

A copy of this report and recommendation will be filed electronically and sent by overnight mail to defendant on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Frederic Block and the undersigned, by September 8, 2008. Failure to file objections within the time specified waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b).

**SO ORDERED.**